## FRANK BENNETT V. THE STATE.

No. 11375.  Delivered March 7, 1928.

**Wife and Child Desertion—Evidence—Held Insufficient.**

Where, on a trial for wife and child desertion, it was shown that the wife left the husband and went to her mother, with her children to live, due to her dissatisfaction with the manner in which her husband was able to maintain her. It does not appear that his failure to better provide for his family was criminal. It is the wilful neglect that is denounced by the law. "Wilful" means with evil intent, with legal malice, or without reasonable ground for believing the act was lawful. See Branch's Ann. P. C., Sec. 2205; Thomas v. State, 14 Tex. Crim. App. 204, and other cases cited.

Appeal from the County Court at Law of Harris County. Tried below before the Hon. Ben F. Wilson, Judge.

Appeal from a conviction for wife and child desertion, penalty a fine of $100 and thirty days in jail.

The opinion states the case.

*A. L. Shaw* of Houston, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

MORROW, PRESIDING JUDGE.—Wife and child desertion is the offense, punishment fixed at a fine of $100 and confinement in the county jail for a period of thirty days.

The offense is thus defined:

"Any husband who shall wilfully desert, neglect or refuse to provide for the support and maintenance of his wife who may be in destitute or necessitous circumstances, or any parent who shall wilfully desert, neglect or refuse to provide for the support and maintenance of his or her child or children under sixteen years in destitute or necessitous circumstances, shall be fined not less than twenty-five nor more than five hundred dollars or be imprisoned in jail not more than one year, or both." (Art. 602, P. C., 1925.)

The evidence in the case consists of the testimony of Anna Bennett, wife of the appellant. She testified that the marriage took place in 1920; that there were two children and that the birth of another was expected. In February, 1927, the prosecutrix, because of sickness, went to a hospital, and upon leaving there, went to the home of her mother. Prior to that time she and the appellant had lived together in the city of Houston, and he lived there at the time of her leaving. It is apparent from the testimony that the cause of her leaving her husband was his failure to earn sufficient money to maintain the family in the manner desired. He was a carpenter and when engaged, which was only part of the time, his earnings amounted to $85 per month. From her testimony we quote:

"I left and went to my mother's because I was not able to work, and did not have anybody to work, and he did not make money enough to get somebody to do the work for me."

She said that there was food provided but not of the kind suitable for her condition; that he did not give her clothes because he did not have any money; that the children were clothed but received their clothing from his mother; that the appellant had credit with the grocer but did not pay promptly. She also said:

"When I went to my mother's, I took the children with me. He took us there. He wanted me to stay at home. He said he would get a nurse to take care of me, but he did not have the money. I knew he did not have the money. I said: 'Mama

can take care of me, and it won't cost us anything, and I want to go there because I know she knows what to do'."

Soon after the marriage they purchased on credit a lot and built a small house on it. They bought household goods on the installment plan, but the payments were not kept up and the furniture had to go back. When she asked him for money for the children, he said he had none, but later gave her $24.

We learn from her testimony that after she had remained in her mother's home for a time they divided their property and lived apart; that on the 14th day of March, 1927, she instituted suit for divorce. The indictment was returned the following day.

The court submitted to the jury the several charges embraced in the indictment, that is, the wilful neglect of the wife and each of the children, and the verdict was responsive to that charge. It would seem from the evidence that there is little justification for the claim that the appellant's acts towards his wife were criminal. From her testimony the separation was due to her dissatisfaction with the manner in which her husband was able to maintain her. Her dissatisfaction may have been just and warranted separation, but it would not follow that his failure to better provide for his family was criminal. It is the wilful neglect that is denounced by the law. "Wilfully" means with evil intent, with legal malice, or without reasonable grounds for believing the act to be lawful. Branch's Ann. Tex. P. C., Sec. 2205; Thomas v. State, 14 Tex. Crim. App. 204; Henderson v. State, 53 Tex. Crim. Rep. 533. It is not the absence of ability to maintain those dependent upon him, but the neglect must be wilful and without justification, which the law denounces. See Smith v. State, 97 Tex. Crim. Rep. 263; Morgan v. State, 300 S. W. 49; Prock v. State, 244 S. W. 609. The burden is upon the state to show the neglect to be wilful. Elms v. State, 270 S. W. 856. If it goes no further than to show a lack of ability, the burden is not discharged. See Elms v. State, supra. In the present instance, it seems manifest that there is such dearth of evidence tending to show that the appellant was wilfully neglectful that the verdict of conviction should not be permitted to stand. The reversal of the judgment is therefore ordered.

*Reversed and remanded.*